IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



MICHAEL NEAL MCGOUGH,          )
                               )
         Plaintiff,            )
                               )
v.                             )      CIVIL ACTION NO.
                               )
KAPLAN, INC.,                  )      02-AR-2120-S
                               )
         Defendant.            )

**ENTERED**

**DEC 2 4 2003**

### MEMORANDUM OPINION

Before the court is the motion of defendant, Kaplan, Inc.
("Kaplan"), for summary judgment and the motion of plaintiff,
Michael Neal McGough ("McGough"), to strike portions of the
evidentiary submissions offered by Kaplan in support of its Rule
56 motion.  McGough, a 52 year old former employee of Kaplan,
claims that he was terminated in violation of the Alabama Age
Discrimination in Employment Act ("AADEA").  Kaplan removed the
case to this court based on the complete diversity of the parties
and the existence of $75,000 in controversy, the latter assertion
being problematic but not challenged by McGough.

#### Undisputed Facts

Kaplan offers preparation courses for entrance and licensing
exams.  Such exams include the SAT, LSAT, and the MCAT, as well
as the nursing licensing exam.  The courses are taught at
Kaplan's 160 permanent sites, or "centers," which are spread
throughout the United States.  In addition to the centers, Kaplan

maintains a number of off-site locations where it teaches courses in rented space.  Kaplan centers are grouped into regions, each managed by a Regional Director.  The regions are then subdivided into areas, which are managed by Area Directors.  Each area contains several centers, each center being managed by a Center Manager.

In November 1997, McGough was hired by the Area Director for Alabama, Tennessee, and Mississippi, Laura Mullins ("Mullins"), to work as an independent contractor for Kaplan's Birmingham Center. McGough was then brought on as a regular employee around February 1998.[1]  In January 2002, Kaplan made Michelle Warren ("Warren") the Regional Director for the Southeast Region, which includes the Birmingham Center.  Shortly after assuming her responsibilities as Regional Director, Warren noticed that the Birmingham Center was staffed differently from any other center in the Southeast Region. No one at the Birmingham Center was officially called a "Center Manager."[2]  The job of Center Manager is to manage all aspects of the center, including profit and loss management, revenue generation, expense management, staff supervision, overall service delivery, and quality control functions.

_____

[1] The parties dispute McGough's official title.  Kaplan says that his title was "Marketing Coordinator," while McGough says that his title was "Program Director."

[2] McGough claims that he was actually the Center Manager, even though his official job title was not "Center Manager." This contention will be discussed in the "Analysis" section.

Warren decided to eliminate McGough's position and to hire a Center Manager.  She directed Mullins to inform McGough of the decision.  In late April 2002, Mullins informed McGough of Warren's decision, but encouraged him to apply for the new Center Manager position.  Warren conducted two interviews with McGough.  The first was in late May 2002, and the second was in early June 2002.  Warren and Mullins also interviewed Steve Hartley ("Hartley") for the Center Manager position.  Mullins decided that Hartley should be offered the job, and Warren concurred.  They offered Hartley the position, and he accepted.  This act constituted a decision to terminate McGough.  Neither Warren nor Mullins knew Hartley's age at the time they hired him, and, based on his appearance, both thought he was older than McGough.   In mid-June 2002, Mullins informed McGough that Hartley had been selected.   Shortly thereafter, Warren and Mullins met with McGough to explain why he was not selected.  On that occasion, Warren informed McGough that the decision was not related to his job performance.

## Analysis

The AADEA makes it unlawful to "[f]ail or refuse to hire or discharge an individual, or otherwise discriminate against an individual with respect to compensation, terms, or privileges of employment, because of the age of the individual."  Ala. Code. § 25-1-22(1).  Claims brought pursuant to the AADEA are evaluated using the same principles that govern the federal Age

3

Discrimination in Employment Act ("ADEA"). *Dooley v. AutoNation USA Corp.*, 218 F.Supp.2d 1270, 1277 (N.D. Ala. 2002); *Bonham v. Regions Mortg., Inc.*, 129 F.Supp.2d 1315, 1321 (M.D. Ala. 2001); *Israel v. Sonic-Montgomery FLM, Inc.*, 231 F.Supp.2d 1156, 1167 (M.D. Ala. 2002). ADEA cases are analyzed under a similar framework to that used in Title VII cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). McGough offers circumstantial evidence of age discrimination. Therefore, the *McDonnell Douglas* burden shifting analysis applies. *See id.; see McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

A plaintiff must first establish a *prima facie* case of age discrimination. Plaintiff argues he was terminated from his position and that his position was given to another.[3] In a termination case, in order to establish a *prima facie* case a plaintiff must show "(1) that plaintiff was between forty and seventy, and thus in the protected age group, (2) that plaintiff was qualified to do the work, (3) that the employer discharged plaintiff, and (4) that the employer subsequently replaced plaintiff or sought a replacement."[4]  *Rollins v. TechSouth,* 833

---

[3] McGough arguably had an age discrimination hiring claim as well, something which Kaplan addresses in its motion for summary judgement.  McGough abandoned that claim in his response to the motion for summary judgment.  Therefore, the court will not discuss the hiring claim.

[4] The *prima facie* case would be different if this were analyzed under a job elimination framework.  If this were a job

F.2d 1525, 1528 (11th Cir. 1987).   If plaintiff succeeds in establishing a *prima facie* case, the employer must then produce a legitimate, nondiscriminatory reason for its action. *See McDonnell Douglas,* 411 U.S. at 802; *Tex. Dep't of Community Aff. v. Burdine,* 450 U.S. 248, 254 (1981).   If the employer meets this burden, the employee must offer proof that the articulated reason is pretextual. *See McDonnell Douglas,* 411 U.S. at 804; *Burdine,* 450 U.S. at 256.

Kaplan argues that McGough neither established that he was "replaced" by Hartley nor that he was qualified for the position of Center Manager, thus failing to establish a *prima facie* case.   The court first turns to the question of "replacement."   The parties disagree about McGough's official job title and job duties at the time of his termination.   McGough claims that his title was "Program Director," while Kaplan argues that his title was actually "Marketing Coordinator."   In support of his position, McGough points to a March 2001 performance review that lists his job title as "Program Director."   Kaplan counters that while McGough was

---

elimination case, in order to establish a *prima facie* case plaintiff would be required to show: "(1) that he was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the bases of age in reaching the decision at issue." *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1082 (11th Cir. 1990).

encouraged to use the title "Program Director" externally, his official internal job title was "Marketing Coordinator." The court need not try to resolve this relatively insignificant dispute, because the overriding question involves the actual job duties and not what the job title was.

McGough argues that while his title was Marketing Coordinator/Program Director, in practice he acted as the Center Manager. He claims that Warren simply "changed the name of the position from Program Director to Center Manager and then terminated [him] and then cut the salary in half and then gave [him] an opportunity to rebid for his old job." Kaplan argues that the positions of Marketing Coordinator/Program Director and Center Manager are substantially different. While the focus of the Marketing Coordinator/Program Director is to increase revenues in the market, the Center Manager is responsible for managing all aspects of the center. The responsibilities of the Center Manager, in addition to increasing revenues in the market, include profit and loss management, expense management, staff supervision, overall service delivery, and quality control functions. McGough does not dispute Kaplan's expanded description of the Center Manager position. Instead, McGough argues that he performed the duties of Center Manager while in his position as Marketing Coordinator/Program Director, and that Hartley, a younger man, replaced him.

By citing to several isolated excerpts in his deposition, McGough seeks to establish that he performed the Center Manager duties. These excerpts, at best, demonstrate that McGough performed *some* of the duties of the Center Manager on very limited occasions when no one else was around.[5]  There is nothing to suggest that they were his job *responsibility*.  Even viewing the evidence in a light most favorable to McGough, his wishful thinking does not establish that he regularly performed the duties of the Center Manager.  In fact, he admitted in his deposition that his primary job was marketing and not managing.  The following dialogue took place during McGough's deposition:

_____

[5] McGough cites to his deposition to support his assertion that he was performing the duties of the Center Manager.  A close look at the excerpts to which he cites demonstrates that his assertions are without support.

Profit and loss management: McGough argues that he participated in the budgeting at the Birmingham Center.  While this is true, his testimony is clear that his participation was limited to the marketing aspects of the budget.

Expense management: McGough makes no argument that he did any expense management.

Staff Supervision: McGough establishes that he did have the authority to hire, fire, and provide input in salary decisions for the student representatives at off-site courses.  McGough did not have the authority to hire or fire anyone at the Birmingham Center.  Mullins was in charge of the Birmingham Center.

Overall service delivery: Hartley explained in his deposition that overall service delivery is essentially customer service.  McGough says that on one occasion he taught a course when the scheduled teachers could not teach the course.  This is his only example of overall service delivery.

Quality control functions: McGough admits that he performed quality control functions only on limited occasions, and he performed the functions only in the absence of the Associate Center Manager, Lisa Lutrell.

> Q: Whether it was programs director or [marketing] coordinator...in your job at Kaplan...yours was a marketing position?
>
> A: Primarily, yes.

McGough Dep. at 98-99.   Later in McGough's deposition, the following exchange took place:

> Q: In the time you were at Kaplan, what was your primary function?
>
> A: New business development, sales and marketing.

*Id.* at 102.   The excerpts McGough cites do not overcome his own clear statements, even when viewing the evidence in a light most favorable to McGough.

McGough's failure to demonstrate that he performed the functions of the Center Manager may be dispositive on the issue of "replacement" as a form of "termination."   McGough relies on *Rollins* to establish his *prima facie* case.   In *Rollins,* plaintiff, Norma Rollins ("Rollins"), brought a wrongful termination case against her former employer, TechSouth Inc. ("TechSouth"). *Rollins*, 833 F.2d at 1526.   Rollins claimed that she was fired because of her age.   *Id.* at 1527.   TechSouth's business was to maintain and update telephone directories in Alabama, Louisiana, Mississippi, and Tennessee.   *Id.* at 1526.   Rollins was hired in 1981 in TechSouth's "in-column" department where her job was to verify ads placed in the telephone directories.   *Id.*   In 1983, she was transferred to TechSouth's accounting department.   *Id.*   In 1984, TechSouth decided to change its billing procedure, a change

8

that affected Rollins' job. *Id.* at 1527. Also in 1984, the TechSouth accounting department hired Mike Richardson ("Richardson"), a 25 year-old, and asked Rollins to train him to do her job. *Id.* Rollins then asked her boss if her job was in danger, and he assured Rollins that her job was secure. *Id.* However, in January 1985, Rollins was fired. *Id.* TechSouth told Rollins that it wanted to keep her on, but could not find a place for her. *Id.* Rollins filed suit alleging age discrimination. *Id.*

In deciding whether a *prima facie* case existed, the *Rollins* court had to decide whether Rollins established that Richardson "replaced" her. *Id.* at 1529. TechSouth argued that Rollins' job had been eliminated entirely and that Richardson performed a function at TechSouth entirely different from the function of Rollins. *Id.* The Eleventh Circuit noted that if it accepted TechSouth's argument, TechSouth would prevail because Rollins would not have established a *prima facie* case. *Id.* Rollins, however, argued that "TechSouth, intending to fire her, restructured and relabelled her position, hired someone else to fill it, had her train that person, and then terminated her." *Id.* The court held that Rollins "set forth enough facts to raise an issue based on this argument." *Id.* In coming to this conclusion, the *Rollins* court found the following facts persuasive: (1) Rollins had to teach Richardson her job; (2) Rollins' duties comprised at least a part of what Richardson did after Rollins' departure; and (3)

9

Rollins possessed the work experience that TechSouth required for Richardson's job, as stated in the ad for the position that Richardson eventually filled.   *Id.*

In the instant case, there is admittedly an overlap between the duties of Marketing Coordinator/Program Director as performed by McGough and the duties regularly performed by a Center Manager. One of the functions of the Center Manager is revenue generation, which had been one of McGough's functions.   In explaining the Center Manager's job, Warren said that "the Center Manager would perform *all* of the marketing functions currently being performed by Mr. McGough...."   Warren Aff. ¶ 8 (emphasis supplied).   A potentially dispositive question, then, is whether the Center Manager's performance of all of McGough's job duties as well as others, without the other factors relied on by the *Rollins* court, such as training the replacement, can lead a reasonable jury to conclude that Hartley, as Center Manager, "replaced" McGough.   The *Rollins* court's rationale does not extend so far as to create a factual issue of whether McGough was "replaced."   McGough would have to argue that *Rollins* stands for the proposition that if any new employee performs the duties of a contemporaneously terminated employee, there is automatically created a jury question of whether the former employee was "replaced."   That such a proposition is erroneous can easily be illustrated.   Carried to its logical extreme, such a proposition would allow a jury to find that a

10

shredder operator was "replaced" by someone outside his protected class if the CEO, in a belt-tightening and security move, decided to run the shredder himself.

Kaplan need not depend either on the "replacement" issue, or on the "qualification" issue, because, assuming *arguendo* that McGough has established a *prima facie* case past these two hurdles, he has nevertheless failed to demonstrate that Kaplan's asserted legitimate business reason for terminating him is pretextual.

Kaplan has rebutted any possible *prima facie* case of discriminatory motivation by producing a legitimate, nondiscriminatory reason for its action. *See McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254. Kaplan says that McGough's position was eliminated in order to bring the anomalous Birmingham Center staffing structure in conformity with all other centers in the Southeast Region. There is no dispute about the Birmingham situation being out-of-step. According to Warren, there were two problems with the operation of the Birmingham Center because of the lack of a Center Manager. First, there was no one assigned solely to the Birmingham Center to handle its day-to-day operation. Second, Mullins was being overworked. Most Area Directors in the Southeast Region were responsible for two to three centers in their area. Mullins was in charge of five Centers and was also acting as the *ad hoc* Center Manager at the Birmingham Center. Based on these problems, Warren, in consultation with

11

other Kaplan management, decided that the Birmingham Center needed a full-time Center Manager.   Warren decided to eliminate the position of Marketing Coordinator/Program Director because the budget of the Birmingham Center did not justify both a Marketing Coordinator/Program Director and a Center Manager.

McGough concedes that this explanation is sufficient to meet Kaplan's initial burden.  Therefore, McGough must offer proof that Kaplan's articulated reason is pretextual.  *See McDonnell Douglas,* 411 U.S. at 804; *Burdine,* 450 U.S. at 256.  In order to demonstrate pretext, McGough must come forward with significant probative evidence, "including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997); *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996).  The Eleventh Circuit also requires that plaintiffs "point to facts which, if true, would present a basis for the disbelief of the defendant's *overall* justification...The plaintiff must call into question the veracity of the defendant's ultimate justification itself."  *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 444 (11th Cir. 1996) (emphasis in original).  If McGough has failed to come forward with such evidence, Kaplan is entitled to summary judgment.  *Chapman v. AI Transport,* 229 F.3d 1012, 1024-25

12

(11th Cir. 2000).

McGough relies on a conversation he allegedly had with Mullins six to nine months prior to his termination. That conversation was discussed in detail during McGough's deposition. McGough explained that Mullins had just returned from a trip with Warren to some of the Kaplan centers in the Southeast Region. McGough asked Mullins how things went, and Mullins said things went well. McGough then said that Mullins told him that Warren wanted to know the age of everyone under Mullins' supervision. McGough asked what Mullins thought Warren meant by asking such a question, and Mullins said she did not know. That was the end of their alleged conversation. Following McGough's explanation of this conversation, the following exchange took place during the deposition:

> Q: Other than this comment or discussion that you have just related to us, do you have any other information or evidence to suggest that the decision to eliminate the sales and marketing position in the Birmingham Center was anything other than a legitimate business decision for legitimate business reasons?
>
> A: No.

McGough Dep. at 379. Mullins denies that any such conversation took place, and Warren denies that she ever asked for the ages of the employees. At the summary judgment stage, all evidence must be viewed in a light most favorable to the non-moving party. Therefore, the court will operate on the assumption that the conversation did take place and that Warren did want to know the ages of the employees under Mullins' supervision.

There are several problems with McGough's "direct" evidence. First, on its face, the statement demonstrates no animosity toward or prejudice against older employees. Second, the probativeness of the evidence is circumscribed by the fact that the inquiry was made at a time temporally remote to the adverse employment action. *See McMillan v. Mass. Soc. Prev. of Cruelty to Animals,* 140 F.3d 288, 300-01 (1st Cir. 1998). Third, McGough has not shown that the inquiry was in any way connected with the decision to terminate him. Neither Mullins nor McGough knew why Warren wanted to know the ages of workers in the Southeast Region. For these reasons, Warren's alleged inquiry about ages falls short of raising a factual issue as to whether Kaplan's articulated reason is pretextual.

Despite not having any additional evidence to suggest that his age was a factor in Kaplan's decision, McGough does offer evidence which he says demonstrates "mendacity" on the part of Kaplan. First, he says that Warren told Mullins to "keep an eye" on McGough. McGough provides no source for this hearsay statement. The court can only guess as to where it came from. In Warren's notes, attached to her affidavit submitted to the court, she says that in January 2002 she encouraged Mullins to be "a more active manager" of McGough. The reason she did this was that when Warren asked McGough to provide her with certain market information that she believed he should have known as part of his job, he was unable

14

to provide it, and, even though she gave him advice on where to find the information, he never followed-up with her.[6]  The court fails to see how, under these circumstances,   Warren telling Mullins to be "a more active manager" of McGough somehow demonstrates pretext for age discrimination.  It is more relevant to McGough's qualifications to be a boss.

Second, McGough relies on a statement allegedly made by Mullins.  McGough says that Mullins told him "they may be trying to get rid of you covertly...."  McGough Dep. at 353.  When asked if he knew who "they" were, McGough said he did not.  Kaplan accurately points out that this statement is hearsay within hearsay and is not admissible unless both levels of hearsay are excepted from the hearsay rule.  *See* Fed. R. Evid. 805.  Kaplan concedes that Mullins' statement falls under a hearsay exception, but argues that, because McGough cannot identify who "they" are, the second level is hearsay and is not excepted.  Kaplan cites several cases directly on point in support of its argument.  *See Zaben v. Air*

---

[6] In Warren's affidavit and in her notes documenting her interactions with McGough, she says she asked McGough to provide her with the market size data for the University of Alabama-Birmingham for the MCAT.  McGough said he did not have that information.  In his brief responding to the motion for summary judgment, McGough says that Warren's instructions for finding the information were confusing and that he did in fact provide her with the information she asked for, but he makes no citation to the record to support those assertions.  In his deposition, McGough says he did gather the information Warren requested, but he admits he did not give it to Warren.  McGough Dep. at 216-17.  Instead, he says he gave the information to Mullins.  *Id*.

*Products & Chemicals, Inc.*, 129 F.3d 1453, 1456-57 (11th Cir. 1997);
*Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002 (3d. Cir.
1988); *Cedeck v. Hamiltonian Federal Savings & Loan Assoc.*, 551
F.2d 1136, 1138 (8th Cir. 1977).  In *Zaben*, an age discrimination
case, two lower-level supervisors allegedly told the plaintiff that
"'they [meaning higher level officials at the company] was [sic]
talking about getting rid of the older employees,' and that 'they
wanted younger employees to train them the way they wanted them.'"
*Zaben*, 129 F.3d at 1455.  The *Zaben* court was unwilling to consider
the statements of the unidentified declarants.  *Id.* at 1456-57.
Following *Zaben*, this court will not admit the statement of the
unidentified declarants.[7]

Third, McGough argues that he was a good employee so that
there was no reason to terminate him other than his age.  He bases
this argument on the fact that Kaplan told him that the reason he
was not selected for the job of Center Manager was not his
performance, and that he received a favorable evaluation from
Mullins.  Kaplan does not contend that McGough did not do a
satisfactory job in his marketing position.  McGough's evidence is
not inconsistent with Kaplan's articulated reason for firing him

---

[7]Unlike the evidence offered by Kaplan that raises potential
hearsay problems, McGough offers this evidence to prove the truth
of the matters asserted.  In other words, McGough offers this
evidence to show that Kaplan was trying to get rid of him
covertly.  For further discussion on this topic see the "Motion
to Strike" section of this opinion.

when his job was eliminated and fails to prove pretext.

Fourth, McGough says Kaplan's mere failure to put him in the job he was already performing demonstrates pretext.  According to McGough's logic, because there were no performance issues at the time of his termination, there was no reason to deny him the job of Center Manager.  The court has already rejected the argument that McGough was performing the functions of the Center Manager.  There is insufficient support for a finding that McGough's job was the same as the new position, even when viewing the evidence in a light most favorable to McGough.

Warren and Mullins fully explained their reasoning for not hiring McGough for the Center Manager position.  Despite his satisfactory performance as a Marketing Coordinator/Program Director, they reasonably did not believe that he was the right person for the Center Manager position.  Warren and Mullins had reason to believe that McGough lacked experience in budgeting, in profit and loss management, and in staff management.  They also had some reservations about his ability to perform the job of Center Manager based on their interactions with McGough while he served as Marketing Coordinator/Program Director.[8]  Specifically, Warren and

---

[8] McGough again looks to his evaluation and argues that, because he was given a favorable evaluation, it is contradictory to now complain about him.  McGough accurately states that he was given a favorable evaluation for the period of January 1, 2000 through March 15, 2001.  The evaluation does not, however, demonstrate Mullins and Warren had no reservations about McGough taking on the job of Center Manager.  Mullins gave McGough a

17

Mullins believed that McGough lacked skill and/or initiative in the operational responsibilities of the Birmingham Center (e.g., customer service,[9] facility maintenance, staff leadership, and class scheduling).  McGough disagrees with the concerns articulated by Kaplan, but cannot demonstrate with evidence that they were a pretext for age discrimination.  Even if he could demonstrate pretext, such evidence would be more relevant to a hiring claim than to the termination claim now before this court.

Fifth, McGough claims that he was more qualified for the

_____

favorable review with regard to his marketing job, she does not now dispute that he did a satisfactory job.  Her reservations, as explained in her affidavit, relate to his performance of the duties a Center Manager would perform.  While employed in his marketing position, McGough was called upon to perform Center Manager-type duties from time to time.  Mullins complains of his performance of those duties in her affidavit.  That is consistent with her approval of his work in his marketing position in the 2001 performance review.  Warren, on the other hand, had nothing to do with that report.  She did not become Regional Director of the Southeast Region until 2002, well after that report was made.


[9] McGough argues (1) that Kaplan's evidence on student complaints is not supported in the record, (2) that student complaints were low, and (3) that handling student complaints was not part of his job.  First, the evidence on student complaints is sufficiently supported in the record.  *See e.g.,* Mullins Aff. ¶ 9; Warren Aff. ¶ 11.  Second, McGough's statement that the complaints were low, on the other hand, is an assertion unsupported in the record.  Third, McGough is correct that student complaints were not part of his job as the Marketing Coordinator/Program Director.  But handling the complaints would be part of his job had he been hired as the Center Manager. Kaplan cites the student complaints as evidence demonstrating that McGough would not make a good Center Manager.  The court fails to see how citing this evidence somehow demonstrates "mendacity" on the part of Kaplan.

18

position of Center Manager than Hartley was. McGough's only
support for the statement that Hartley was not as qualified as he
for the position of Center Manager is that Hartley was fired from
his last job because of unsatisfactory performance. Hartley
explains in his deposition that he was terminated because his job
was eliminated. The court need not go into detail in evaluating
the relative qualifications of Hartley and McGough. First, that
evidence does not deal with the termination of McGough, which is
the subject of this suit. Second, even if Kaplan's rationale for
hiring Hartley were relevant, the Eleventh Circuit has instructed
that the role of courts is not to act as a super-personnel
department, second-guessing the decisions of employers. *See Lee v.
GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000). Instead,
the court's inquiries are limited to evaluating whether the
employer based its decision on unlawful criteria. *See id.* McGough
has not come up with such evidence.[10]

---

[10] McGough raises several other arguments in the "mendacity"
section of his brief responding to the motion for summary
judgement. He argues (1) that the Birmingham Center was making a
profit thanks to his efforts; (2) that the ad placed for the
Center Manager job was initially labeled "entry-level" manager,
thus indicating Kaplan's preference for a younger person; (3)
that Kaplan relies on hearsay; and (4) that the notes taken by
Warren documenting her interactions with McGough are self-serving
and lack proper foundation. First, McGough's statement that he
was the reason for the Birmingham Center's profits is an
unsupported assertion, which the court need not consider.
Second, Kaplan has sufficiently explained its use of the term
"entry-level." McGough is correct in saying that the initial job
listing for the Center Manager did say "entry level." Warren
says that the term "entry-level" is an accurate description of

McGough has not met his ultimate burden of proving that Kaplan's asserted legitimate reason for firing him was pretextual. Because McGough does not dispute that the Birmingham Center was staffed unlike any other center in the Southeast Region, in that it lacked a Center Manager, he must rely on his own evaluation of the job he held and his hopeful conclusion that it was the same job by another name.  The undisputed facts contradict his conclusion.

Lastly, it is undisputed that Mullins and Warren had no knowledge of Hartley's age when he was hired.  It is also undisputed that both Mullins and Warren believed that Hartley was older than McGough.  Hartley, unlike McGough, is balding and has a gray beard.  McGough has come forward with only one comment involving age, and, as previously discussed, the statement is not probative of pretext.  The rest of McGough's evidence largely consists of unsupported or irrelevant assertions.

McGough has not met his burden of coming forward with probative evidence "sufficient to permit a reasonable factfinder to

_____

the Center Manager position because it is "the lowest level Kaplan position that includes management responsibilities" (there is an Associate Center Manager, but that position does not have management responsibilities).  Warren Aff. ¶ 19.  Warren goes on to state that even though the ad was technically accurate, it was misleading because prior management experience was a requirement for the job and Kaplan was receiving applications from individuals with no prior management experience.  *Id.*  Kaplan ultimately removed the term "entry-level" to reflect its preference for individuals with prior management experience.  *Id.*  The third and fourth arguments are evidentiary objections and do not go to the issue of pretext.  These arguments are dealt with in the "Motion to Strike" portion of this opinion.

conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528; *see Mayfield*, 101 F.3d at 1376.

Kaplan's motion for summary judgment is due to be granted.

### Motion to Strike

McGough objects to the following statement in Mullins' affidavit:

> ...I had serious reservations that Mr. McGough had the skills and attitude needed to perform many of the other essential Center Manager functions such as customer service, budgeting, staff management and leadership.

Mullins Aff. ¶ 4. McGough objects to this statement citing Rules 701 and 802(3), Federal Rules of Evidence. Rule 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

McGough says the evidence should be excluded because it is "opinion evidence and mental impressions without a proper foundation."  The court finds that Kaplan provided sufficient foundation for the statement.  Mullins explains her reasons for coming to the conclusions in the statement in question in the subsequent paragraphs of her affidavit.  McGough also objects to the statement under "Rule 802(3)."  The court is unable to find a Rule 802(3).  There is a Rule 802, but it deals with hearsay and is not

applicable to Mullins' statement.

McGough next argues that the following statement in Mullins' affidavit is objectionable:

> I observed and/or was provided information regarding several situations where Mr. McGough either "got into it" with a student (his words), was "rude" to students (their words), or failed to properly handle student and/or customer problems or complaints. For example, in June 2002, a student complained to me that Mr. McGough did not allow him to view any instructional videos because the student had not put his name in the reservation book properly.

McGough argues that there is "no showing that this complaint came before [McGough's] termination." The complaint occurred in June 2002, and McGough was terminated on June 14, 2002. Therefore, McGough argues, the statement should be struck pursuant to Rules 401 and 402, Federal Rules of Evidence. Because the court need not consider this specific contention in coming to its decision, McGough's motion to strike this portion of Mullins' affidavit will be denied as moot.

McGough next argues that complaints from students and co-workers referenced in Mullins' affidavit should be excluded under Rule 801(c), Federal Rules of Evidence. Rule 801(c) provides:

> "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Kaplan persuasively argues that the statements are not offered to prove the truth of the matters asserted, but instead to "establish

22

that Mullins received complaints from [McGough's] co-workers and from students regarding [McGough], and these complaints impacted her opinion regarding [McGough's] ability to handle customer service situations and to lead/motivate the Birmingham Center staff." The court finds that Kaplan does not offer the student and co-worker complaints to show that they were true. Therefore, the excerpts in question are not hearsay and should not be excluded.

McGough's final objection deals with the notes Warren attached to her affidavit. The notes chronicle Warren's interactions with McGough starting in January 2002. McGough argues that the notes are inadmissible because Kaplan has not laid the proper foundation for their admission. The court will deny the motion to strike with regard to the notes because Warren says, without contradiction, in her affidavit that the notes were kept in the ordinary course of business at Kaplan. Warren Aff. ¶ 23.

### Conclusion

By separate order, the court will grant Kaplan's motion for summary judgment and will deny McGough's motion to strike.

DONE this _____24ᵗʰ_____ day of December, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE